UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ATTORNEY DISCIPLINARY
PROCEEDING.

Misc. No. 26-72001

Hon. Scott W. Dales
Hon. James W. Boyd
Hon. John T. Gregg

_____/

*EN BANC* OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            HONORABLE JAMES W. BOYD
            HONORABLE JOHN T. GREGG
            United States Bankruptcy Judges

SCOTT W. DALES, CHIEF JUDGE.

Pursuant to the *En Banc* Order dated April 16, 2026 (ECF No. 1, the "*En Banc* Order"), the court conducted a hearing on May 13, 2026, in Grand Rapids, Michigan, at which attorney Ryan B. Moran, Esq., and the U.S. Trustee's Trial Attorney, Kenneth G. Lau, Esq., appeared and made arguments.

The court took the extraordinary step of issuing the *En Banc* Order following numerous orders by each of the court's three judges over approximately sixteen months (roughly since January 2025) designed to address the court's growing dissatisfaction with Mr. Moran's representation of his consumer-debtor clients, and adherence to the court's rules and orders in multiple cases. Many of the court's prior orders imposed modest (and case specific) discipline.[1] Nevertheless, missteps that initially appeared to be isolated events in the universe of Mr. Moran's

---

[1] The court compiled a list of cases in which its judges have sanctioned or discussed Mr. Moran's unprofessional conduct, attached as Appendix A to the *En Banc* Order. *See En Banc* Order at p. 4.

cases eventually congealed to reveal a constellation of unprofessional conduct mostly, though not exclusively, in his chapter 13 caseload.[2]

During the hearing Mr. Moran sought to minimize, though not deny, the litany of issues prompting the unusual *en banc* proceeding. He acknowledged the missed response deadlines, unexcused hearing no-shows, careless reading of court orders, and multiple fee disgorgements that have characterized his practice in the Western District since the beginning of 2025.

A recent example from *In re Kalambayi*, Case No. 25-03130-jtg, epitomizes the court's concerns. The Hon. John T. Gregg issued an order to show cause requiring an explanation from Mr. Moran for his failure to appear at a plan confirmation hearing on December 16, 2025, without first obtaining an adjournment or otherwise communicating with the chapter 13 trustee regarding the hearing. Mr. Moran also failed to file his retainer agreement in violation of the local rules. *See In re Kalambayi*, Case No. 25-03130-jtg, Order dated December 17, 2025 (ECF No. 14); *see also* LBR 2016-1(d) ("… no more than 21 days after filing of a Chapter 12 or 13 petition a professional person seeking compensation as an administrative expense must file a copy of the executed fee agreement and serve the trustee and the United States Trustee").

To protect the interests of Mr. Moran's client, the court adjourned the confirmation hearing (though denial of confirmation of a plan that the debtor had not properly prosecuted would, of course, have been permissible in the court's discretion). Mr. Moran's failure to properly prosecute the case at confirmation and comply with the retainer agreement filing requirement also prompted the United States Trustee ("UST") to file a motion under 11 U.S.C. § 329 and Fed. R. Bankr. P. 2017 for disgorgement of Mr. Moran's fee. The parties, with the court's approval, negotiated a

---

[2] Mr. Moran filed his first case in the Western District of Michigan's Bankruptcy Court in 2015. *See In re Gerard William Dallaile*, Case No. 15-02403-jtg, and since then has filed approximately 330 cases, nearly 100 of which remain pending. Chapter 7 cases account for roughly 80% of his caseload, with chapter 13 cases representing the rest.

resolution of that motion. *In re Kalambayi*, Case No. 25-03130-jtg, Order dated January 16, 2026 (ECF No. 28). Nevertheless, the court eventually denied confirmation in the *Kalambayi* matter and, after some post-denial docket activity, ultimately dismissed the case.[3]

Another recent and perhaps more extreme example comes from the twin-cases of Mr. Moran's client, Justin Kiebler. *See In re Kiebler*, Case No. 24-03033-jtg and Case No. 26-01450-jtg. In the first Kiebler case, Mr. Moran failed to respond to the chapter 13 trustee's post-confirmation dismissal motion, and the court dismissed Mr. Kiebler's case without objection on March 11, 2026. Twenty-one days later, Mr. Moran filed a motion under Fed. R. Bankr. P. 9024, arguing "excusable neglect." Rather than explain the reasons for not opposing dismissal, Mr. Moran simply argued, in effect, "no harm no foul" because he filed a plan amendment instead. The court denied the motion to set aside the dismissal order.

Once again the UST sought disgorgement of Mr. Moran's fee, and again the parties negotiated a resolution, this time requiring disgorgement and expressly agreeing to an order specifying that if Mr. Kiebler "elects to retain Counsel Moran to assist Debtor with the commencement and maintenance of a future Chapter 13 bankruptcy to replace the instant dismissed case, Counsel Moran shall not be entitled any 'no look' fee of any amount under paragraph 16 of the Memorandum regarding Allowance of Compensation and Reimbursement of Expenses for Professionals under 11 U.S.C. § 330(a) (as amended Effective January 1, 2024)." *See In re Kiebler*, Case No. 24-03033-jtg, Agreed Consent Order to Resolve United States Trustee's Motion for Review and Return of Attorney Compensation Under 11 U.S.C. § 329 and

---

[3] After the court denied confirmation of Mr. Kalambayi's original plan, Mr. Moran filed an amended plan on January 29, 2026. That same day, he withdrew the amended plan and filed a second amended plan in its place for reasons that remain unclear. The chapter 13 trustee objected to the second amended plan. Thereafter, the parties agreed to adjourn the confirmation hearing three times, with conditions, into July. Ultimately, the court dismissed Mr. Kalambayi's case on May 20, 2026, for failure to make preconfirmation plan payments and other significant delays.

Fed. R. Bankr. P. 2017 (ECF No. 66, the "Agreed Order"). The very next day in Mr. Kiebler's newly filed case, however, Mr. Moran filed an Attorney-Client Retainer Agreement Chapter 13 (Case No. 26-01450-jtg, ECF No. 4), reflecting a "minimum flat fee" – *i.e.*, a "no look" fee – of $4,100 or $3,500, as referenced (inconsistently) in either the first or fifth paragraph in the retainer agreement. One assumes that Mr. Moran read the Agreed Order, but he clearly failed to follow it.[4] Remarkably, these events in the *Kiebler* matters occurred well-after the court raised these exact concerns in the *En Banc* Order. Indeed, at a time when the court would expect a lawyer who is the subject of such an order to exhibit meticulous fidelity to the rules, the court's orders, and his own commitments to his client and the UST, Mr. Moran inexplicably dropped the ball, again.

At the hearing, Mr. Moran tried (and failed) to mitigate these offenses by explaining that he has no disciplinary problems in the Eastern District of Michigan and by pointing to his track record with chapter 7 debtors which, he says, reveals no serious shortcomings over many years. He noted, too, that his chapter 13 client history in the Western District has similarly shown long-term success. This may be more or less true, but it offers little solace to his existing clients, like Messrs. Kalambayi and Kiebler, who bear the brunt of his recent missteps. *See Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 397 (1993) (client "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."). Finally, to address the court's issues in the Western District (and his staff's reluctance to service Western District cases), he stated that he has put unspecified managerial systems in place and has hired and trained additional staff to handle his chapter 13 caseload.

---

[4] At the hearing Mr. Lau charitably suggested that Mr. Moran appeared to be building his practice in the Western District in a manner akin to building an airplane while flying it. To this apt analogy, the court would add only that Mr. Moran also appears to be flying his unfinished airplane on autopilot.

During the hearing the court inquired into the possible efficacy of voluntary continuing legal education or practice management training for Mr. Moran and his paraprofessional staffers, and perhaps, more personally, self-referral to the State Bar of Michigan's Lawyers and Judges Assistance Program ("LJAP").[5]  Suffice it to say, Mr. Moran tepidly considered the former but stubbornly opposed the latter.  The court proposed the more ameliorative approach of CLE and the LJAP as an alternative to serious disciplinary measures and expresses disappointment in Mr. Moran's response.

On the record, the court inquired whether Mr. Moran had self-reported this court's prior orders sanctioning him[6] under Michigan's reciprocal discipline rules.  M.C.R. 9.120(A)(2) ("A lawyer who has been the subject of an order of discipline … by any court of record … of the United States … shall inform the grievance administrator and board of entry of such order … within 14 days of the entry of the order …").  Mr. Moran responded that he was unaware of the requirement but would look into it.  This response, naturally, does not inspire confidence in Mr. Moran's professionalism, and it undermines the self-policing philosophy upon which the legal profession depends.

After considering Mr. Moran's written and oral responses to the *En Banc* Order and the court's questions during the hearing, serious concerns persist about his substandard practice and its impact on his clients in this District.

---

[5] The LJAP reminds our profession that "[t]o be a good lawyer; one must be a healthy lawyer" and that "[i]mproving and protecting attorneys' well-being helps to maximize their professional competency."  *See* Lawyers and Judges Assistance Program (https://www.michbar.org/generalinfo/ljap/home).

[6] *See In re Gailey*, Case No. 23-02132-swd, Memorandum of Decision and Order dated November 12, 2025 (ECF No. 63) (Order requiring Mr. Moran to co-sign documents with local counsel for 45 days); *In re Kalambayi*, Case No. 25-03130-jtg, Order dated January 14, 2026 (ECF No. 25) (Order reprimanding Mr. Moran); *In re Smith*, Case No. 24-01117-jwb, Order dated March 26, 2025 (ECF No. 46) (Order regarding a previous Order to Show Cause requiring Mr. Moran to attend and participate in a Federal Bar Association CLE program).

During the hearing, comments from Mr. Moran regarding the economics of practicing in our District, especially recently with several disgorgement orders under § 329,[7] have prompted him to consider discontinuing his practice here.  From this colloquy, the court infers that he responds more readily to financial incentives, or disincentives, and this inference (coupled with his response to the court's CLE and LJAP suggestions) informs the court's ultimate remedy to address the concerns underlying the *En Banc* Order, to which the court now turns.

First, the court will not suspend Mr. Moran's electronic filing privileges – doing so would jeopardize the interests of his many clients who depend on CM/ECF, as the UST argued during the *en banc* hearing.

Second, the court has considered, and discarded, the option of suspending his authority to file new chapter 13 cases.  This measure may exceed, or at least approach the limits of, the court's authority under LBR 9010-1.  It could also create a subtle and unwelcome incentive for Mr. Moran to steer new clients toward chapter 7, regardless of its suitability in a particular case.

Third, the court recognizes that CLE in Michigan remains voluntary, and similarly, a remedy involving the LJAP depends on the willingness of the attorney to participate in, and commit to, the program.

Fourth, referral to the disciplinary machinery of the State Bar of Michigan or the United States District Court *at this time* undervalues Mr. Moran's previously demonstrated capacity to serve his clients and, as a practical matter, could (depending on the ruling of the District Court) interfere with his clients' choice of counsel.

---

[7] *See In re Kiebler*, Case No. 24-03033-jtg, Order dated April 30, 2026 (ECF No. 66); *In re Soerries*, Case No. 25-00653-swd, Order dated June 30, 2025 (ECF No. 34); *In re Kalambayi*, Case No. 25-03130-jtg, Order dated January 16, 2026 (ECF No. 28); and *In re Fluke-Henry*, Case No. 26-00027-jtg, Order dated April 30, 2026 (ECF No. 37).

Fifth, although the court believes that requiring Mr. Moran to associate with local counsel would bring the dual benefits of providing a much-needed mentor and familiarity with the local rules and procedures to him and his practice, the court's prior efforts of this nature have failed because Mr. Moran has subverted the court's purpose by reading its order narrowly, or because the local bar hesitates to involve itself with Mr. Moran under the circumstances, the diseconomy of dual representation, or some combination of these and other factors.

Having carefully considered its options and the record, the court has decided to (1) reprimand or censure Mr. Moran for his ignorance or flouting of applicable rules and court orders, missed deadlines, and occasional truancy in attending court; and (2) reduce, but not eliminate, the "no look" fee the court typically awards through its chapter 13 plan confirmation orders. The court adopts this approach because it believes Mr. Moran responds more vigorously to financial incentives than opprobrium, and because it balances the court's duty to ensure professional conduct and the interests of Mr. Moran's clients in continued representation using counsel of their choice.

More specifically, for one-year after entry of this *En Banc* Opinion and Order, subject to shortening in response to incentives provided below, any "no look" fee that the court awards to Mr. Moran shall not exceed $2,050.00. Mr. Moran may seek compensation exceeding that amount during this period but must do so through the usual fee application process. Notwithstanding the foregoing, the court may shorten the period if Mr. Moran persuades the court that he has met various voluntary benchmarks described below concerning CLE and the LJAP. Finally, the court will also include a "drop dead" provision to ensure that Mr. Moran observes his reciprocal discipline reporting obligations and avoids sanctionable behavior in the Western District going forward.

The court regards today's *En Banc* Opinion and Order as imposing a censure and a sanction, both designed to induce Mr. Moran to bring his conduct into line with the court's expectations, rather than drive him out of practice. He has shown promise, at least in the past, as an attorney who can obtain substantial relief for his clients within this District, and the court intends through today's decision to deter future missteps while protecting the public. If, however, any judge of this court enters an order sanctioning or otherwise reprimanding Mr. Moran for harming a client by missing response or other filing deadlines, missing court appearances without satisfactory excuse or pre-arrangement with the court or opposing parties, violating court orders or rules of any sort, the court will not hesitate to immediately refer the matter to the Chief District Judge for the Western District of Michigan under L.Gen.R. 2.3(d) (W.D. Mich.) with a request to expedite the disciplinary proceeding. Under the circumstances, the court regards these measures as an "appropriate action" within the meaning of Canon 3(B)(6) of the Code of Conduct for United States Judges.

NOW, THEREFORE, IT IS HEREBY ORDERED that Ryan B. Moran, Esq., is formally CENSURED and within 21 days after entry of this *En Banc* Opinion and Order, he shall file in this Miscellaneous Proceeding an affidavit or solemn declaration establishing to the court's satisfaction that he has complied with his self-reporting obligations under M.C.R. 9.120(A)(2) or similar authority with respect to this order and other orders of discipline referred to herein.

IT IS FURTHER ORDERED for a period commencing upon entry of this *En Banc* Opinion and Order and extending for 365 days (the "Sanction Period") any "no look" chapter 13 fee that Mr. Moran requests for himself (in a retainer agreement or otherwise), that the chapter 13 trustee requests on his behalf, or that any judge of this court awards to Mr. Moran in connection with any

case in which the court has not confirmed a chapter 13 plan as of the entry of today's order shall not exceed $2,050.00.

IT IS FURTHER ORDERED that the court may reduce the Sanction Period as follows:

(1) by 30 days, if on or before August 20, 2026, Mr. Moran files an affidavit or solemn declaration establishing to the court's satisfaction that he has (a) entered into an agreement with the LJAP for a confidential professional consultation and/or assessment as determined by LJAP, (b) that he has completed such consultation and/or assessment, (c) that he has in good faith complied with any recommended follow-up, and (d) that he has executed a release to authorize LJAP to confirm his participation in the LJAP consultation and/or assessment;

(2) by 30 days if, on or before October 20, 2026, Mr. Moran files an affidavit or solemn declaration establishing to the court's satisfaction that he has completed a CLE course, online or in person, in law practice management;

(3) by 30 days if, on or before October 20, 2026, Mr. Moran files an affidavit or solemn declaration establishing to the court's satisfaction that he has completed a CLE course, online or in person, in consumer bankruptcy; and

(4) by 30 days if, on or before October 20, 2026, Mr. Moran files an affidavit or solemn declaration establishing to the court's satisfaction that a paraprofessional in his employ and assisting with Western District cases has completed a CLE course, online or in person, for paraprofessionals in a subject the court regards as germane to bankruptcy practice.

IT IS FURTHER ORDERED that the court shall refer Mr. Moran for disciplinary proceedings under L.Gen.R. 2.3(d) (W.D. Mich.) if, during the Sanction Period, he violates this *En Banc* Opinion and Order, a judge of this court enters an order disciplining Mr. Moran pursuant to LBR 9010-1(b), or a judge of this court otherwise enters an order reprimanding or sanctioning

Mr. Moran for unexcused failure to respond to any motion or appear as ordered at a hearing scheduled in a case concerning his client, comply with any court order, local rule, Federal Rule of Bankruptcy Procedure, or applicable statute touching and concerning practice before this court.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this *En Banc* Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Ryan B. Moran, Esq., and the United States Trustee, by First Class U.S. Mail.

**FOR THE COURT,** *EN BANC*

**IT IS SO ORDERED.**

Dated May 21, 2026

Scott W. Dales
United States Bankruptcy Judge